IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

RICHARD COURTNEY, *Special Needs*                                  PLAINTIFFS
*Trust for Adrianna Slaughter*,
AND SHEILA IVY

V.                                                                             NO. 1:13-CV-33-DMB-JMV

STATE FARM FIRE AND CASUALTY COMPANY                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This lawsuit arises from an insurance coverage dispute involving a homeowner's policy issued by Defendant State Farm Fire and Casualty Company ("State Farm") to Plaintiffs Richard Courtney and Sheila Ivy. Plaintiffs reported a fire loss claim on the insured property, and State Farm denied coverage based on the loss occurring after the policy was cancelled and after the policy would have otherwise expired. Plaintiffs filed suit against State Farm for breach of the policy in the Circuit Court of Lee County, Mississippi. State Farm removed the case to this Court, and filed the instant motion for summary judgment on grounds that Plaintiffs cannot prove the policy was effective at the time of the fire loss. Plaintiffs filed a counter motion for partial summary judgment as to coverage owed to Courtney, and assert that coverage exists because State Farm failed to properly cancel the policy. For the reasons below, the Court finds that summary judgment is not proper at this time.

I.     **Factual Background and Procedural History**

Richard Courtney is the sole trustee for the special needs trust for Sheila Ivy's minor child, Adrianna Slaughter. Courtney Dep. [35-4] at 2. On July 20, 2009, Plaintiffs obtained a homeowner's insurance policy from State Farm covering property located at 2601 Pemberton

Avenue, Tupelo, Mississippi ("Property"). The policy was effective from July 20, 2009, to July 20, 2010. Plaintiffs renewed the policy for one year, extending coverage through July 20, 2011. Ivy is the insured on the policy, and Courtney is the loss payee. *See* Renewal Certificate [35-1] at 1-4. Plaintiffs procured the homeowner's policy through State Farm Agent Tillmon Calvert. Doc. [35-2] at 8.

On February 4, 2011, five months before the policy's expiration date, State Farm claims it mailed separate letters to Plaintiffs notifying them that the policy would be cancelled on March 9, 2011. *See* Docs. [35-7][35-8]. It is undisputed that Courtney received the notice letter; however, the parties dispute whether State Farm mailed a letter to Ivy because she claims to have never received it. The letter allegedly sent to Ivy indicates that State Farm enclosed a check for the amount of unearned insurance premium and explained that the policy was being cancelled because the Property was "no longer owner occupied." Doc. [35-8] at 1. No explanation was provided in the letter sent to Courtney.

Leigh Leverette, a trust administrator in Courtney's office, contacted Ivy to find out whether she had received a notice from State Farm and whether she knew why the policy was being cancelled. Docs. [35-6][35-7]. Ivy told Leverette she did not receive a letter and did not know the reason for cancellation. Doc. [35-6]; Leverette Dep. [35-5] at 24-26. Leverette then contacted Calvert's office. After learning the reason for cancellation, Leverette advised State Farm that the Property was not vacant. She believed State Farm would re-inspect the Property and correct the cancellation. Plaintiffs did not follow-up on the cancellation notice, request reinstatement or renewal of the policy, or make any payments for insurance coverage during 2011. Doc. [35-2] at 11-12.

On February 1, 2012, the Property was damaged by fire. Ivy tried to contact State Farm Agent Calvert to report the claim but did not get a response. Ivy then contacted Courtney's office and advised that there was fire loss on the Property. A staff member in Courtney's office contacted State Farm to report the claim and was advised that there was no coverage on the Property because the policy had been cancelled.

On January 10, 2013, Plaintiffs filed a complaint in the Circuit Court of Lee County, Mississippi, against State Farm for breach of the insurance policy and for grossly negligent conduct. State Court Compl. [2]. Plaintiffs sought actual damages, punitive damages, extra-contractual damages, attorneys' fees, and costs. On February 20, 2013, State Farm removed the action to this Court based on diversity of citizenship.[1] On July 8, 2013, the parties filed a joint motion to dismiss the claims for punitive damages, extra-contractual damages, and attorneys' fees. Mot. [18]. The joint motion was granted, and those claims were dismissed. Order [20]. On November 15, 2013, State Farm filed the instant motion for summary judgment. Plaintiffs responded to the motion and included a counter motion for partial summary judgment in their response.

## II. Discussion

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Coury v. Moss,* 529 F.3d 579, 584 (5th Cir. 2008). When evaluating whether summary judgment is appropriate, a court must construe the facts and evidence in the light most favorable to the nonmoving party. *Ford, Bacon & Davis, LLC v.*

---

[1] According to the Notice of Removal [1], State Farm is an Illinois corporation with its principal place of business in Illinois; Plaintiffs are resident citizens of Mississippi; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3

*Travelers Ins. Co.*, 635 F.3d 734, 736 (5th Cir. 2011) (citing *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010)).  A material fact issue exists if a jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  After the party seeking summary judgment meets its burden, the nonmoving party must "come forward with specific facts showing a genuine factual issue for trial."  *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).  The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but rather must show that there is an actual controversy warranting trial.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

**B.  Applicable Law**

Subject matter jurisdiction in this case is based on diversity of citizenship; therefore, the Court will apply the substantive law of the forum state, Mississippi.  *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citations omitted).  "[T]o determine state law, federal courts look to final decisions of the highest court of the state. When there is no ruling by the state's highest court, it is the duty of the federal court to determine … what the highest court of the state would decide."  *Transcon. Gas Pipe Line Corp. v. Trans. Ins. Co.,* 953 F.2d 985, 988 (5th Cir. 1992) (citations omitted).  *See James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (courts must look to decisions from state's highest court to determine issues of state law and, in absence of such rulings, make *Erie* guess based on rulings from intermediate appellate state courts).

**C.  Analysis**

State Farm argues that no coverage exists because the fire occurred on the Property after the policy was cancelled and after the policy was set to expire had it not been cancelled.  State

4

Farm alternatively argues that Courtney, as trustee, is liable for any loss on the Property because he failed to take appropriate action to secure coverage and, therefore, breached his fiduciary duty to Ivy's daughter. Plaintiffs contend that State Farm must provide coverage because it failed to properly cancel the policy and give notice of nonrenewal. In addition, Plaintiffs argue that State Farm cannot deny coverage to Courtney because he complied with all conditions precedent as a trustee to recover under the policy. For that reason, Plaintiffs request partial summary judgment on the alleged coverage owed to Courtney, which request they included in their response to State Farm's summary judgment motion. However, the local rules of this Court require motions to be docketed separately and not included in a party's response. *See* L.U. Civ. R. 7(b)(3)(C). Because Plaintiffs failed to file their counter motion for partial summary judgment in accordance with the local rules, the motion is denied.

The primary issue in State Farm's summary judgment motion is whether the policy was effective at the time of the fire loss on the Property. To resolve this issue, the Court must determine whether the policy was properly cancelled and, if not cancelled, whether it automatically renewed when State Farm failed to give notice of nonrenewal. If the policy was cancelled or lapsed without renewal, coverage is not afforded and State Farm is entitled to judgment as a matter of law. If, however, the policy was not cancelled but automatically renewed, coverage may extend to Plaintiffs' claim.

### 1. Cancellation of Policy

"Absent a statutory requirement or policy provision, an insurer has no duty to provide notice of the termination of a policy." *Lowery v. Guar. Bank & Trust Co.,* 592 So. 2d 79, 83 (Miss. 1991). Both Mississippi statute and the homeowner's policy in this case require State Farm to provide notice of cancellation.

5

Section 83-5-28(1) of the Mississippi Code provides in relevant part:

> A cancellation, reduction in coverage or nonrenewal of liability insurance coverage, fire insurance coverage or single premium multiperil insurance coverage is not effective as to any coverage issued or renewed after June 30, 1989, unless notice is mailed or delivered to the insured *and* to any named creditor loss payee by the insurer not less than thirty (30) days prior to the effective date of such cancellation, reduction or nonrenewal.

MISS. CODE ANN. § 83-5-28(1) (emphasis added). The Fifth Circuit has reasoned that the purpose of § 83-5-28 "is to allow the insured [an opportunity] to obtain insurance elsewhere" when there is a change in coverage. *Great Am. Ins. Co. of New York v. Lowry Dev., LLC,* 576 F.3d 251, 255-56 (5th Cir. 2009) ("The purpose of notice statutes such as this is to allow the insured to obtain insurance elsewhere when there is a reduction of coverage.") (citation omitted).

The relevant policy provision concerning notice is in "Section II – Conditions" of the policy. It states that in the event of cancellation, State Farm:

> will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice:
> …
> (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
>  (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or
>  (b) if the risk has changed substantially since the policy was issued.
>
> We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

Homeowner's Policy [35-9] at 21-22.

State Farm claims that it mailed separate letters to Courtney and Ivy on February 4, 2011, notifying them that the homeowners' policy would be cancelled effective March 9, 2011. A copy of the letters is included in the record. Ivy's letter was addressed to the insured Property at

6

2601 Pemberton Avenue, Tupelo, Mississippi. Doc. [35-8]. Courtney's letter was addressed to his office. Though Courtney received his letter, Ivy claims she did not.

"Under Mississippi law, an insurance company does not have to prove actual notice by its insured in order to prevail on the issue of cancellation." *Carter v. Allstate Indem. Co.*, 592 So. 2d 66, 70 (Miss. 1991). A certificate of mailing, although not conclusive proof, creates a rebuttable presumption that the insured received notice of cancellation. *Id*. at 75. This presumption may be rebutted by the insured, but denial alone "is insufficient to create a triable issue of fact." *Id*. Proof of mailing a cancellation notice is sufficient "*absent* countervailing evidence of sufficient weight to rebut the presumption that it was received." *Id*. (citation omitted; emphasis in original).

State Farm did not submit a certificate of mailing for the letter it claims to have sent Ivy regarding cancellation of the policy. Nor did State Farm submit proof that the check for unearned premium allegedly sent with the letter was cashed. Ivy testified during her deposition that she did not remember ever receiving any mail from State Farm regarding her homeowner's insurance, and that Courtney's office handled all issues regarding home insurance on the Property. Ivy Dep. [35-3] at 6, 10-11. Plaintiffs admit that a letter was "purportedly mailed" to Ivy, but claim Ivy did not receive it. Doc. [35-2] at 12.

Although Ivy may not have received written notification, she may be deemed to have received constructive notice when Leverette informed her that a cancellation letter had been mailed to Courtney's office and asked whether she received one as well. Leverette asked Ivy if she knew any reason there might be to cancel the policy, and whether the Property was vacant. Based on these conversations, Ivy was advised of State Farm's intent to cancel the policy, and Plaintiffs cannot reasonably argue that Ivy did not have any notice of cancellation. Nevertheless,

State Farm was required by statute to give *actual notice* and required by the homeowner's policy to give *written* notice of cancellation to the insured. *See Strickland v. Motors Ins. Corp. (MIC)*, 970 F.2d 132, 137 (5th Cir. 1992) (while insured may have received constructive notice of policy expiration, such notice was insufficient to relieve insurer of statutory duty to give actual notice).

The evidence in the record does not raise a presumption that Ivy received written notice of cancellation. State Farm alleges that it mailed a notice of cancellation to Ivy and asks that the Court consider the totality of circumstances to determine whether sufficient notice was given to the insured. Def.'s Mem. [44] at 5. The Court acknowledges that a certificate of mailing is not the only form of proof an insurer can offer to show notice has been delivered. However, if Mississippi law does not allow an insured to rebut a presumption of receipt by "mere denial," certainly it does not allow an insurer to raise the presumption by mere allegations. *See Carter,* 592 So. 2d at 75 (insured's "mere denial" is insufficient to rebut the presumption of receipt).

As to its totality of circumstances argument, State Farm submits internal records indicating that the letter was mailed, and deposition testimony from Plaintiffs and Leverette indicating that Ivy received constructive notice of cancellation. The record also contains renewal statements addressed and presumably mailed to Ivy at the insured Property. However, this evidence is insufficient to raise the presumption of receipt. *See Auto. Ins. Co. of Hartford v. Lipscomb,* 75 So. 3d 557, 562 (Miss. 2011) ("This Court has never recognized that the testimony of the insurer's employee, coupled with the insurance company's own internal document … creates a presumption of delivery …"). Mississippi case law is clear that a certificate of mailing from an insurance company constitutes sufficient proof of notice to an insured absent countervailing evidence rebutting the presumption of receipt. *Fid. Fin. Servs., Inc. v. Stewart,* 608 So. 2d 1111, 1113 (Miss. 1992) (citing *Carter,* 592 So. 2d at 75). Because no certificate of

mailing or other sufficient proof of notice is in the record, State Farm has not shown it properly cancelled the policy. As such, a material issue of fact remains regarding whether Ivy received the notice letter from State Farm.

### 2. Renewal of Policy

Since there is an inadequate showing of policy cancellation, the Court next considers whether the policy automatically renewed after the coverage period expired based on State Farm's failure to give notice of nonrenewal.[2] Under § 83-5-28 of the Mississippi Code, an insurer's nonrenewal is ineffective unless proper notice is given to the insured and loss payee at least 30 days before nonrenewal takes effect. However, when nonrenewal is based on a failure to pay the insurance premium, § 83-5-28 does not apply unless a loss payee is named in the policy. When a loss payee is named, an insurer is only required to give 10 days' notice. *See* MISS. CODE ANN. § 83-5-28(1) ("This section shall not apply to nonpayment of premium unless there is a named creditor loss payee, in which case at least ten (10) days' notice is required.").

On the issue of nonrenewal, the policy in this case provides:

> We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the Declarations. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

Homeowner's Policy [35-9] at 22.

State Farm argues that it did not have an obligation to give notice of nonrenewal because the policy was cancelled before its expiration date and because Plaintiffs failed to pay the premium. State Farm further contends that payment of premium is a condition precedent to renewal and Plaintiffs' failure to pay caused the policy to lapse. In response, Plaintiffs assert that

---

[2] Nonrenewal occurs when an insurance company decides not to renew a policy. *See* Homeowner's Policy [35-9] at 22.

cancellation was ineffective and the policy renewed on its own terms when State Farm failed to provide notice of nonrenewal.

The Mississippi Supreme Court has held that failure to pay a renewal premium may result in a lapse of coverage for homeowners but not loss payees unless the loss payee is given proper notice. *See Nat'l Sec. Fire & Cas. Co. v. Mid-State Homes, Inc*., 370 So. 2d 1351, 1354 (Miss. 1979) ("Under the terms of the quoted provision the policy is automatically cancelled for nonpayment of each annual premium; however, the provision conflicts with the ten day notice requirement of the statute and is ineffective to a mortgagee, but is effective to a mortgagor or owner of the property."); *Bankers & Shippers Ins. Co. of New York v. Meridian Naval Fed. Credit Union*, 431 So. 2d 1123, 1125 (Miss. 1983) ("The insurance company in *Mid-State Homes* had no more right against a home owner for nonpayment of premiums than in this case. Under either policy, *as to the home owner*, the policy lapsed upon the nonpayment of the renewal premium.") (emphasis in original). Based on this holding, the policy may have lapsed as to Ivy (assuming the cancellation was not effective) when she failed to pay the renewal premium. However, the extent to which nonpayment of premium may preclude coverage for Ivy, it does not preclude coverage for Courtney because he was not given proper notice of nonrenewal as required by § 83-5-28(1). *See Highlands Ins. Co. v. Allstate Ins. Co.*, 688 F.2d 398, 403 (5th Cir. 1982) ("Without ten days' notice to Tri-State, as loss payee under the Allstate renewal policy, the nonpayment of the premium on renewal policy could not terminate Tri-State's coverage.") (citation omitted).

State Farm cites *Willis v. Mississippi Farm Bureau Mutual Insurance Company* to support its argument that the policy lapsed when Plaintiffs failed to make premium payments. *See* 481 So. 2d 256, 259 (Miss. 1985). In *Willis*, the defendant insurance company sent a

premium due notice to the insured before the automobile insurance policy expired, and the insured did not timely remit payment. *Id.* at 257. Following an automobile accident, the insured tendered payment of the premium but his claim was denied because the policy lapsed. *Id.* The insured argued that the insurance company was required to give express notice of cancellation before coverage could be terminated. *Id.* at 258. The Mississippi Supreme Court found that the premium notice gave the insured sufficient notice of termination and his failure to timely remit payment caused a lapse in coverage. *Id.* at 259-60.

The case before this Court differs from *Willis* since State Farm did not give Plaintiffs notice of nonrenewal. Such notice would have given Plaintiffs an opportunity to pay the premium or secure coverage through another insurer. *See Lowry Dev., LLC*, 576 F.3d at 255-56. Based on the undisputed proof that Plaintiffs were never given notice, § 83-5-28(1) renders the nonrenewal ineffective. Thus, the policy did not lapse due to nonpayment of premium.

### 3. Other Arguments

State Farm alternatively argues that Courtney breached his fiduciary duty by failing to secure a replacement homeowner's policy and, as such, equity dictates that he is responsible for any loss to Ivy and her daughter due to lack of coverage. The Court declines to address this argument for two reasons. First, as discussed earlier in this opinion, it is unclear that the homeowner's policy lapsed. Second, breach of fiduciary duty is not an issue in this case. The party to whom Courtney owes a fiduciary duty should raise any claims for breach of that duty, not State Farm.

## III. Conclusion

In light of the above analysis, the Court finds that summary judgment cannot be granted because material fact issues exist regarding whether the homeowner's policy was effectively

cancelled. Accordingly, State Farm's motion for summary judgment is denied. Plaintiffs' counter motion for partial summary judgment is also denied because it does not comply with the local rules of this Court.

SO ORDERED, this the 30th day of September 2014.

                                                **/s/Debra M. Brown**
                                                **UNITED STATES DISTRICT JUDGE**